Our last case for argument today is U.S. v. Broadfield. Mr. Drysdale, whenever you're ready. Mr. Drysdale, I'm here today on behalf of Brian Broadfield. Mr. Broadfield practices Messianic Judaism. And in accordance with that sincerely held religious belief, he wishes to consume a glass of wine on the Sabbath. He has a condition of supervised release that prohibits him from doing that. So the narrow question before this court today is whether forbidding Mr. Broadfield from consuming a single glass of wine is the least restrictive means of preventing a governmental release. How could the government enforce that, especially given Mr. Broadfield's history? Certainly, Your Honor. So I think at least the way it was presented in the district court was a breath test. When? And it would be on the Sabbath. By whom? Probation. After he drank the glass of wine or before? Whenever probation would presumably want to do the test, but it would have to be on the Sabbath at some point. Probation oftentimes does random breath testing of defendants. They do random urine testings, random drug testings. If probation were to show up at his house, and again, this is how it was presented. If probation were to show up at his house with a breath test and breathalyze him, probation could then make the determination whether or not Mr. Broadfield had properly complied with the condition of supervised release. Well, what if it was 0.0 and he said, I haven't drank my wine yet. Would they have to come back? If they would like to. They don't have to. I think it's up to probation whether probation would like to come back to monitor that or not. But if it's 0.0, he clearly hasn't drank and he is not in violation of his terms. You see the problem with the breathalyzer. You have this very small window in which the probation officer has to get there to administer the breath test for the breath test to have any effect whatsoever, which is different than a urine test or a blood test or something like that because you've got this much longer window in which you can determine whether the individual is using alcohol or using illegal drugs. So then, I guess in my mind, it gets down to did the district court abuse its discretion in saying, no, I'm not going to require this? Well, to take that in reverse, I think on the first question, it does not come down to an abuse of discretion because the first question is a de novo review under the Religious Freedom Restoration Act. And the government has conceded that there is a sincerely held religious belief. No question. I'm not disputing that. And so I think when you're talking about the monitoring problems, first of all, none of this was developed in the record by the government below. The government just simply said that if there was a way to monitor this, they would agree to it. And then they never went into any of the questions that the court is now currently asking about breathalyzers. But when we look at breath tests and the way probation would administer them and the way supervised release works, this is why we have a supervised release revocation process. If probation shows up with a breath test and he blows, I don't know, let's say a .05, and probation says, we don't believe that's consistent with one glass of wine, probation brings a petition, we go to an evidentiary hearing. No, but that's true for every single defendant in every condition of supervised release. That's really not how supervised release works. And your client has this history, by the way, that the district court was certainly taking it into account and imposing this condition, right? Well, I disagree that that's not how supervised release works. That's exactly how supervised release works. No, no, no. I mean, but there would be no – but, you know, what you're saying is supervised release, it doesn't – you know, if you have – if there's a condition, you just make the condition and you violate the condition, well, you go to jail and too bad. I mean, that's – what you're saying is the district judge has very little discretion in what conditions to impose because of the potential punishment here. Certainly not, Your Honor. At least that's what I'm hearing you say. No. It doesn't matter what the district court imposes. Punish him. What I'm saying is both under the law 3583 and, in this instance, under the Religious Freedom Restoration Act, the district court has an obligation to impose the least restrictive supervised release condition.  Let's talk about least restrictive because the district court isn't deciding this in a vacuum. They're deciding it as to a particular person for which there is a record established, which I think had at least two or three reports that said this defendant needs complete abstinence. So least restrictive for Mr. Broadfield could be zero. Maybe it's not for a client who had no history of alcohol abuse, but, I mean, this isn't being decided in a vacuum. And so I certainly would agree that Mr. Broadfield should not be allowed to drink excessively and should not be allowed to drink outside of the hours we're talking about. To the extent that there is evidence... But isn't there evidence in the record that if he takes one drink? I don't think that evidence exists in the record, Your Honor. I don't think the government has pointed anything in the record that says if Mr. Broadfield takes one drink, then everything is off the rails here. In fact, in their brief, they actually try to shift that burden onto us. Their brief says, well, Broadfield has not presented evidence that he can only take one drink. That's not our burden, once they've made the concessions that they have, that his religious belief is sincere and that they have impacted it. They have the burden, then, to come forth and show why he cannot have one glass of religious wine. And what we did is we said, here is how we think you monitor that. What's the difference between religious wine and secular wine? Well, there's no difference in the actual wine. What I'm saying is that's the reason he wants the wine. Got it. And that's what takes it out of the context of all of these other cases I think we're citing in our briefs where individuals are coming in front of the court and says, well, I just want a drink. None of those individuals are bringing religious claims like Brian Broadfield is. So we gave a way to monitor this, and nobody ever engages with it in the record. It was explained very clearly by Mr. Broadfield's counsel. Here's what we think the monitoring process looks like and why we think this is doable, and nobody ever actually dug in. The government just said, we just think he's dangerous when he drinks. And that's really what they're doing on appeal, too. We just think he's dangerous when he drinks too much. He is. He should not be allowed to drink too much. The district court relied on him drinking too much. When it talks about him drinking a whole bottle of liquor in 15 minutes. There's no foundation for all these experts saying complete abstinence. There is a recognition that he doesn't have the self-control to stop. So there's also some problems with that complete abstinence stuff because there's, again, zero evidence in the record that the district court ever actually read and considered any of that. But to the extent that there's no point in there where it says that he can't have a glass of wine with a religious ceremony. It says we do recommend the reports you're talking about.  We do recommend abstinence, but it doesn't say that it's absolutely required or that he's going to completely fly off the deep end if he has one drink in a religious ceremony. So I see I'm into my rebuttal time if the court has no questions. Perfect. Thank you. Okay, Ms. Boyle. Good morning, Your Honors. May it please the court, counsel. My name is Katherine Boyle on behalf of the United States. Mr. Broadfield can't use alcohol because once he starts, he can't stop. That's what Mr. Broadfield's own defense attorney said in June 2024, less than two years ago at Mr. Broadfield's supervised release hearing, which involved multiple allegations of alcohol abuse and resulting criminal conduct. And that is why the district court correctly declined to modify the condition here, prohibiting Mr. Broadfield from drinking alcohol. This is a judge who had extensive experience with Mr. Broadfield's case history. He presided over this case from the indictment onward. As the court explained, if Mr. Broadfield is under stress and drinks a glass of wine, quote, there's good reason to believe he could go off the deep end. And Mr. Broadfield's history shows that Mr. Broadfield is dangerous when he drinks. Moreover, the condition banning Mr. Broadfield from consuming alcohol comports with the Religious Freedom Restoration Act. As Mr. Broadfield concedes, the prohibition on drinking alcohol is in furtherance of a compelling government interest in light of his criminal history. And those interests include deterring him from future criminal conduct, promoting rehabilitation, and protecting the public. The prohibition is also the least restrictive means of furthering that interest. Mr. Broadfield spends significant time arguing what kind of testing might show whether his consumption is limited to religious ceremonies, which, as an aside, was a little bit unclear in the district court record. Now he's saying he just wants a glass of wine on the Sabbath. But in the district court, in his amended motion by counsel referring to his pro se motion, there were requests to drink alcohol at multiple religious ceremonies without specification. So Mr. Broadfield spends this time arguing what kind of testing could show he was only consuming alcohol during these specific religious events. And that's a discussion we can have, but the overarching problem here, as the district court explained and correctly keyed in on, is that Mr. Broadfield has demonstrated and Mr. Broadfield has actually conceded that he cannot stop drinking once he starts, and he's also conceded that his drinking is closely linked with criminal and violent behavior. There are multiple instances of this throughout the record. We have cited instances in our brief where Mr. Broadfield told state probation he couldn't stop drinking. He mentioned his inability to stop using cocaine. He also mentioned in 2024, when he was talking to an examiner, that when he drinks, he drinks too much too fast. So the government is not shifting the burden on Mr. Broadfield by pointing out that the record is replete with instances of him drinking too much and committing criminal conduct and does not have instances where he's able to manage one drink. The government is relying on the record in this case and Mr. Broadfield's own concessions that he drinks too much when he begins drinking. And that also comports with all of the mentions and evaluators' recommendations for abstinence in this case. So given the compulsive nature of Mr. Broadfield's consumption and its documented dangerous consequences, it's clear that a total ban is appropriate regardless of the testing issues. But it's also clear that enforcement difficulties would plague a partial ban. The urinalysis test that probation generally uses only shows that a defendant drank, not whether it was for excess or for religious ceremony. And it would be much more difficult if probation were not able to use that urinalysis test, which can show alcohol metabolites up to 80 hours after a person drank throughout the week for fear that they would get alcohol metabolites from permitted drinking during the Sabbath. That means probation would have to rely on a breathalyzer for testing all week, and that's not very workable because you have a much narrower window, I think as Judge Kirsch pointed out, to discover a violation when you're using a breathalyzer test. For the same reasons, the court correctly determined that there was no greater deprivation of liberty than necessary. If your honors have no further questions, I'll rest on the arguments in our brief and ask that the court affirm. Okay, thank you, Mr. Dreyfus. Thank you, your honors. Mr. Dreyfus, would you like rebuttal? Very briefly in relation to one point that the government raised about the clarity of what we were asking for. It's very clear, particularly from page 3 of the transcript and the district court at the hearing, that we were asking for a very, very narrow exception of one glass of religious wine during the Sabbath. And so that's the only thing I wanted to clear up, is that it's never been we're asking to drink all the time or outside of the Sabbath. In fact, we concede many times in the district court that that is not a good idea for Mr. Broadfield. This is a question involving religion. The Supreme Court takes religion very seriously. Mr. Broadfield has indeed given away to monitor his sincerely held religious beliefs, and we believe that he should be able to exercise those. Thank you, your honor. Thank you, Mr. Dreyfus. Thank you, Ms. Boyle. The case will be taken under advisement, and the court will be in recess until tomorrow, until this afternoon.